UNITED STATES DISTRICT COURT

for the

DISTRICT OF MASSACHUSETTS

JEREMY MARTIN HAAR,

    PLAINTIFF,

V.                                                          CASE NO.

F. Powers

AW KOSAKOWSKI

A. DOBY

ANTHONY JOHNSON

M. OBEJESSI

MR. SMART

DEFENDANTS

## CIVIL RIGHTS COMPLAINT ACCORDING TO RELIGIOUS FREEDOM RESTORATION ACT (RFRA) 42 U.S.C. §2000bb, FEDERAL TORT CLAIMS ACT, AND BIVENS V. SIX UNKNOWN NAMED AGENTS, 403 U.S. 388, 392-97 91 S.CT. 1999 (1971)

### INTRODUCTION

    This is a civil rights action filed by Jeremy M. Haar, a federal prisoner for damages and injunctive relief under 42 U.S.C. §2000bb, the Federal Tort Claims Act, and Bivens, alleging violations of his constitutional rights and the Religious Freedom Restoration Act. The plaintiff also alleges the torts of negligence and intentioal infliction of emotional distress.

### Jurisdiction

1. The Court has jurisdiction over the plaintiff's claims of violations of federal constitutional rights under 42 U.S.C. §§1331(1) and 1343. As well as 42 U.S.C. §2000bb.

2. The Court has supplemental jurisdiction over the plaintiff's state law tort claims under 28 U.S.C. §1367.

### Parties

1. The plaintiff, Jeremy M. Haar, is a Fort Lee, New Jersey resident currently incarcerated by the United States Attorney General in the Federal Bureau of Prisons and currently held at the Federal Medical Center in Devens, Massachusetts.

2. Defendant Bowers is the Warden of FMC Devens.

3. Defendant Kosakowski is a Associate Warden of FMC Devens.

4. DFefendant Doby is the captain of FMC Devens

5. Defendant Johnson is the Food Service Administrator of FMC Devens.

6. Defendant Objessi is the Supervisory Chaplain of FMC Devens.

7. Defendant Smart is a Trust Fund Specialist of FMC Devens.

8. All defendants acted under color of federal law during all facts named in the complaint. All defendants are sued in their individual capacities.

## Facts

1. Plaintiff Haar was tranfered to FMC Devens on September 11, 2024.

2. Plaintiff's religion in Sentry was Orthodox Jewish and plaintiff was on a kosher diet.

3. During plaintiff's intake process he confirmed that he would indeed receive his kosher diet immediately.

4. Plaintiff went to the chow hall to collect his dinner however was refused a kosher tray and was told he was not on the kosher diet list and to check back tomorrow.

5. Plaintiff immediately emailed religious services and spoke to defendant Obejessi in person and requested that it be fixed immediately as he had been on a kosher diet for months and would not eat regular mainline.

6. Defendant Obejessi stated that plaintiff would have to wait several days before he could receive his kosher diet, as defendant Obejessi claimed that plaintiff had to meet with him before he could be placed on a kosher diet.

7. Plaintiff explained to defendant Obejessi that that was unacceptable as eating mainline food would force him to violate his religious beliefs and he was already on the Kosher diet in the BOP and had been receiving them while he was in transit.

8. For the next several days plaintiff went without his kosher diet and was forced to fast as he would not eat the regular mainline meal.

9. Upon attending plaintiff's first Friday night Sabbath service he noticed that defendants provided Devens inmates grape juice and matzos to perform Kiddish instead of wine and challah bread which is custom and what is suggested to be used under plaintiff's beliefs during Sabbath services in order to respect and follow the requirements of Jewish law.

10. Upon speaking with defendant Obejessi plaintiff was informed that even though BOP policy allows the consumption of wine as part of religious services FMC Devens and defendants Bowers, Doby, Kosakowski, and Obejessi would not allow them to have it.

11. Plaintiff pointed out that the Christian inmates were given a small amount of wine as part of some of their services at Devens and that the Jewish inmates should be provided the same but defendants refused.

12. Plaintiff spoke with defendant Kosakowski and Bowers about this issue on or about September 20, 2024 about this issue however they refused to provide

the wine for services.

13. In addition to requesting wine during Sabbath services, plaintiff spoke to defendants Obejessi, Bowers, Doby, and Kosakowski about being provided with challah bread for Sabbath services.

14. Defendants claimed that they did not have the budget money to order and provide challah each week. Plaintiff informed them that a BOP approved organization, the Aleph Institute would donate challah each week for the Jewish inmates and that this had been done at plaintiff's previous BOP prisons.

15. Defendants informed plaintiff that even though the Aleph Institute is a BOP approved vendor they would not allow them to send in challah to the prison.

16. Plaintiff on or about October 10, 2024 spoke to defendant Obejessi and requested to be permitted to order a pair of electric beard and hair clippers through the religious special purchase order program, as Jewish law does not permit Orthodox Jews to use razors as well as cut their hair a certain length, and that his previous institution which was a higher security BOP medium had permitted him to order two sets.

17. Defendant Obejessi informed plaintiff that he could not approved that and it would have to be approved by defendants Bowers and Doby.

18. On or about October 11, 2024 plaintiff spoke to defendants Bowers and Doby and requested to be permitted to order clippers.

19. Defendant Doby told plaintiff that it was the dumbest thing he had ever heard and that plaintiff could not order them.

20. When plaintiff explained to both defendants that he had been permitted at his previous institution to order them, defendants stated they did not care.

21. On or about October 20, 2024 in preparation for the Jewish holiday of Chanukah, plaintiff as well as other Jewish inmates at FMC Devens submitted a request to defendant Obejessi to be provided olive oil candles for the holiday as were previously provided by FMC Devens and are required under Jewish law and beliefs.

22. Defendant Obejessi stated that they would not be provided as he did not have the budget to order them however inmates could order them through the special purchase program.

23. Upon plaintiff and other inmates at Devens filling out the SPO forms and submitting them, they were informed that they could not actually order the candles as defendants refused to allow them as they were allegedly a"safety hazard".

24. After being informed that their orders had been denied, plaintiff and other inmates spoke to defendants Obejessi, Bowers, Doby, and Kosakowski and explained that Jewish law required them to have olive oil candles.

25. Defendants refused to allow plaintiff and other inmates to order them and stated that they could use the wax candles that they had already purchased.

26. When plaintiff explained that he could not use those as they do not always burn for the minimum amount of time required defendants refused and told plaintiff they did not care.

27. Defendants also attempted to claim that it was a safety risk however defendants allowed one Orthodox Jew to order and use olive oil candles.

28. On or about December 14, 2024 plaintiff's access to the BOP TRULINC public messaging service was suspended.

29. When plaintiff spoke to defendant Bowers on or about December 21, 2024 plaintiff informed Bowers that he used the service to communicate with his Rabbi as well as receive Jewish newletters and publications that are only available online and through email, and that the BOP could limit his access and allow him to only communicate with his religious advisors and receive religious publications.

30. Defendant Bowers confirmed that it was indeed a possibility however he refused to do it.

31. In March, 2025 the Jewish holiday of Purim was to occur therefore in February, 2025 plaintiff spoke to defendants Obejessi and Bowers once again requesting to be provided wine as it was Jewish custom and law to drink wine during the holiday of Purim. In addition plaintiff requested to be allowed to receive a holiday package from the Aleph Institute.

32. Defendants refused to accomodate any of plaintiff's religious requests for his hopliday thereby significantly burdening his exercise of religion.

33. In April, 2025 the Jewish holiday of Passover occured and therefore in March, 2025 plaintiff once again spoke to defendants about the preparations for the holiday and what he would need. In addition plaintiff and other Jewish inmates were permitted to purchase special purchase orders for the holiday including special kosher for passover food items.

34. Plaintiff once again requested to be provided wine for the passover sedar as it is required under Jewish law for an adult male to drink a minimum of four cups of wine each night of the sedar.

35. Once again plaintiff's requests were denied despite BOP policy allowing wine to be provided as part of religious rituals.

36. On or about April 5, 2025 plaintiff and other Jewish inmates at FMC Devens went to pick up their passover special purchase orders.

37. Upon picking up their orders plaintiff and other inmates notice that a large amount of the food they had ordered had not been provided as well as most of the items that were ordered were not kosher for passover as requried and therefore plaintiff and the other inmates would not be permitted to consume them during passover.

38. Trust fund staff informed plaintiff that it was defendant Smart's responsibility to ensure that all the items plaintiff and the other inmates ordered were in fact provided and that they were kosher for passover, and that if there were any issues plaintiff should speak with defendant Smart.

39. Plaintiff on or about April 6, 2025 spoke to defendants Bowers, Doby, Kosakowski, Obejessi, and Smart and explained the issues with the orders including the fact that plaintiff could not eat most of what he had just paid for due to the fact it was not kosher for passover.

40. Defendants refused to fix the issues and refused to allow plaintiff to place another order and or receive kosher for passover food from the Aleph Institute.

41. On the first night of Passover, 2025 defendant Johnson failed to provide the necessary and required sedar plates for the religious meal. As a result of this failure plaintiff and other Jewish inmates at FMC Devens were not able to conduct a full and proper sedar meal according to Jewish law. In addition the fact that wine was not provided for the sedar violated plaintiff's sincere religious beliefs.

42. On or about May 1, 2025 plaintiff spoke with defendant Obejessi and informed him that Orthodox Jews may not eat prior to doing their morning prayers, and requested that either Jewish inmates be provided with a grab and go kosher meal at breakfast or that they be allowed to take their breakfast back to their housing units in order to consume after they complete their morning prayers.

43. Defendant Obejessi stated that this was not up to him and would be up to the administrative staff as well as the food service administrator.

44. On or about May 2, 2025 plaintiff spoke to defendants Johnson, Bowers, Kosakowski, and Doby during mainline and requested that he and other Jewish inmates be permitted to take out their breakfasts from the chow hall and eat them inside their cells, due to the fact that under Jewish law they were not permitted to eat prior to completing their morning prayers.

45. Defendants refused to make this simple exception and told plaintiff

either eat in the chow hall or go hungry.

46. On or about June 1, 2025 plaintiff spoke with defendant Obejssi and requested to be permitted to purchase shelf stable meals through an SPO as allowed per BOP policy due to the fact that kosher shelf stable meals are not sold on the FMC Devens commissary.

47. Defendant Obejessi stated that it was not permitted and that he would not allow plaintiff to place such an order. Therefore plaintiff mentioned the exact policy number and informed defendant Obejssi of such however he still refused.

48. In preparation the Chanukah 2025 plaintiff spoke to defendant Obejessi on or about September 20, 2025 and requested to be permitted to order olive oil candles for Chanukah.

49. Once again defendant Obejessi refused to allow plaintiff to order them significantly hindering plaintiff's religious exercise.

## Claims

1. The actions of defendants mentioned in the above complaint violates plaintiff's right to freedom of religion secured under the First Amendment to the Constitution of the United States.

2. The actions of refusing plaintiff to order electric clippers as required under his religion severely hinders his religious exercise and is clearly not the least restrictive means and therefore violates the Religious Freedom Restoration Act.

3. Defendants refusal to allow plaintiff and other Jewish inmates to eat their breakfast in their cells significantly hinders plaintiff's religious beliefs and exercise and is not the least restrictive means and therefore violates the Religious Freedom Restoration Act.

4. Defendant Bowers refusal to allow plaintiff to send and receive emails to and from his religious leaders and receive electronic religious newsletters and publications by completely banning his access to the TRULINC public messagingh system is clearly not the least restrictive means and therefore violates the Religious Freedom Restoration Act.

5. The actions of defendants in refusing to allow plaintiff to order and use olive oil Chanukah candles clearly is not the least restrictive means and thereby violates the Religious Freedom Restoration Act.

6. The actions of defendants in refusing to provide plaintiff wine for his religious rituals contrarty to his religious beliefs and BOP policy is not the least restrictive means and thereby violates the Religious Freedom Restoration] Act.

7. The actiopns of defendants Bowers, Doby, Kosakowski, and Obejessi in refusing to allow ALeph Institute a BOP approved vendor to donate and send in Challah to the prison for Jewish inmates is not the least restrictive means and therefore violates the Religious Freedom Restoration Act.

8. The failure of defendants to provide plaintiff a Kosher diet upon his arrival at FMC Devens violated his religious beliefs and was not the least restrictive means and therefore violated the religious freedom restoration act.

9. The refusal by defendants to provide plaintiff a kosher meal for several days and therefore forcing the plaintiff to fast constituted negligence and intentional infliction of emotional distress in violation of Massachusetts law.

10. The above mentioned actions by defendants clearly constitute negligence in violation of /Massachusetts law as all defendants owe plaintiff a duty of care (to not violate his religious beliefs and follow BOP policy) and breached that duty by committing the actions mentioned in this complaint.

Relief

1. Injunctive relief ordering FMC Devens and the defendants to allow plaintiff to order a minimum of one set of electiric beard trimmers.

2. Injunctive relief ordering defendants to permit plaintiff and other FMC Devens inmates to order olive oil candles for the holiday of Chanukah.

3. Injunctive relief ordering defendants to permit plaintiff and other FMC Devens Jewish inmates to bring their breakfasts back to their unit and consume them after their morning prayers.

4. Injunctive relief ordering defendants to permit the Aleph Institute to mail in challah for consumption by jewish inmates during Sabbath services.

5. Injunctive relief ordering defendants to provide plaintiff with wine during each Sabbath service as well as any other Jewish service and or holiday where it is custom or required.

6. Compensatory damages against each defendant

7. Punitive damages against each defendant.

8. Any and all other relief this Court deems proper.

Respectfully Submitted,

Jeremy Martin Haar

08518509

FMC Devens

PO BOx 879 Ayer MA 01432

November 14, 2025